**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| TYRONE JORDAN, | ) | 2:07-cv-00854-HDM-RAM |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER |
| vs. | ) | |
| | ) | |
| M. VEAL, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff is a state prisoner proceeding *pro se*. The action is proceeding against defendants V. Cullen, R. Perez, R. St. Germain, S. Moreno, R. Anderson, E. Arnold, L. Jensen, M. Fisher, J. Purtee, S. Stanley, T. Ehlers, and W. Fisher. Defendants W. Fisher, Perez, St. Germain, Moreno, Jensen, Purtee, Arnold, Anderson, Ehlers, and Cullen have executed waivers of service of process.[1]

---

[1] Defendants S. Stanley and M. Fisher have not been served. (*See* Docket #17).

1

On July 13, 2009, defendants filed a motion to dismiss for failure to state a claim (#18). Plaintiff opposed the motion (#21), and defendants replied (#23). On August 11, 2009, the court converted defendants' motion into a motion for summary judgment and granted defendants up to and including September 10, 2009, in which to file a supplement in support of the motion. Plaintiff was granted up to and including October 13, 2009, in which to file any response. Defendants have filed a supplement (#29), but plaintiff has not filed any response.

On February 20, 2006, plaintiff and another inmate were involved in a fight at the California Medical Facility ("CMF"), where plaintiff was then housed. (Def. Supp. Ex. DX A). They were placed in administrative segregation but released the following day after signing a statement indicating that they were not enemies and agreed to treat each other in a civilized manner. (Pl. Am. Compl. 3; *id.* Ex. D; Def. Supp. 2).

On February 25, 2006, plaintiff was served with a Rules Violation Report ("RVR") charging him with "mutual combat" for the February 20, 2006 incident. (Supp. Ex. DX A). On April 13, 2006, and May 4, 2006, hearings were conducted on the RVR, which plaintiff refused to attend. (*Id.*) At the second hearing plaintiff was found guilty of mutual combat. (*Id.*)

On February 22, 2006, plaintiff was placed in administrative segregation due to safety concerns and pending possible transfer after an incident that was suspected to be a continuation of the February 20, 2006, altercation. (*Id.* Ex. DX C). The initial administrative segregation review took place two days later, and plaintiff was retained in segregation. (*Id.* Ex. DX D).

On March 30, 2006, plaintiff was served another administrative segregation notice stating he was being retained because an investigation had concluded plaintiff was "a disruptive and destabilizing factor with[in] the CMF general population." (Pl. Am. Compl. Ex. G). Plaintiff was retained in segregation pending disposition of the RVR for mutual combat and a classification hearing to determine his safety concerns, appropriate housing, or transfer needs. (*Id.*)

On May 19, 2006, a subsequent administrative segregation review was conducted by the Institutional Classification Committee ("ICC"). (Def. Supp. Ex. DX E). Plaintiff was retained in administrative segregation pending transfer to another prison after it was determined he could no longer safely program at CMF. Although plaintiff was assigned a staff assistant, he claims he received no help during the hearing. Plaintiff further claims he was denied an opportunity to present his views on disciplinary charges as well as a review of the March 30, 2006, administrative segregation notice ("March notice"). The documentation does not indicate that any disciplinary charges were presented at the hearing and further indicates that plaintiff actively participated and agreed with the committee's actions. (*See id.*)

Also on May 19, 2006, plaintiff was served with a new administrative segregation notice stating the reason for placement was documented enemy concerns in the CMF general population. (Pl. Am. Compl. Ex. J). The notice was administratively reviewed on May 20, 2006, (*id.*), and the ICC conducted an initial administrative segregation review on May 26, 2006, (Def. Supp. Ex. DX F). The committee recommended that plaintiff be transferred to another

3

prison and retained in segregation pending transfer.  Plaintiff claims that he requested to be heard on the May 19, 2006, administrative segregation notice ("May notice") and the disciplinary charges contained therein, but the committee denied his requests.  Plaintiff further claims he received no help from the staff assistant appointed at this meeting.  The documentation does not indicate that any disciplinary charges were presented at this hearing and further indicates that plaintiff actively participated and disagreed with the committee's actions.  (*See id.*)

On August 18, 2006, the ICC conducted a subsequent administrative segregation hearing.  (*Id.* Ex. DX G).  The committee assigned plaintiff a staff assistant and decided to retain plaintiff in segregation pending transfer.  Plaintiff claims that he requested to be heard on the March and May notices and the disciplinary charges contained therein, but the committee denied his requests.  Plaintiff further claims he received no help from the staff assistant appointed at the meeting.  The documentation does not indicate that any disciplinary charges were presented at this hearing and further indicates that plaintiff actively participated and disagreed with the committee's actions.  (*See id.*)

On November 9, 2006, the ICC conducted another subsequent administrative segregation review.  (Pl. Am. Compl. Ex. M).  Plaintiff was assigned a staff assistant, from whom he claims he received no help.  Plaintiff further claims that he requested to be heard on the March and May notices and the disciplinary charges contained therein, but the committee denied his requests.  The documentation does not indicate that any disciplinary charges were presented at this hearing and further indicates that plaintiff

4

actively participated and disagreed with the committee's actions. (*See id.*)

On November 15, 2006, plaintiff was transferred to California State Prison Sacramento. (Def. Supp. Ex. DX H).

The court converted defendant's motion to dismiss into a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d). Plaintiff was advised of the requirements for opposing a motion for summary judgment in this court's order dated August 11, 2009 (#24).

Summary judgment "shall be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of demonstrating the absence of a genuine issue of material fact lies with the moving party, and for this purpose, the material lodged by the moving party must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1378 (9th Cir. 1998). A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *Lynn v. Sheet Metal Workers Int'l Ass'n,* 804 F.2d 1472, 1483 (9th Cir. 1986); *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

Once the moving party presents evidence that would call for judgment as a matter of law at trial if left uncontroverted, the respondent must show by specific facts the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[T]here is no issue for trial unless there is

sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id*. at 249-50 (citations omitted).  "A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation."  *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir. 1978); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993) ("[I]n the event the trial court concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free . . . to grant summary judgment.").  Moreover, "[i]f the factual context makes the non-moving party's claim of a disputed fact implausible, then that party must come forward with more persuasive evidence than otherwise would be necessary to show there is a genuine issue for trial."  *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998) (citing *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987)).  Conclusory allegations that are unsupported by factual data cannot defeat a motion for summary judgment.  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

    If the nonmoving party fails to present an adequate opposition to a summary judgment motion, the court need not search the entire record for evidence that demonstrates the existence of a genuine issue of fact.  *See Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029-31 (9th Cir. 2001) (holding that "the district court may determine whether there is a genuine issue of fact, on

6

1  summary judgment, based on the papers submitted on the motion and
2  such other papers as may be on file and specifically referred to
3  and facts therein set forth in the motion papers"). The district
4  court need not "scour the record in search of a genuine issue of
5  triable fact," but rather must "rely on the nonmoving party to
6  identify with reasonable particularity the evidence that precludes
7  summary judgment."  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir.
8  1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th
9  Cir.1995)).  "[The nonmoving party's] burden to respond is really
10 an opportunity to assist the court in understanding the facts.  But
11 if the nonmoving party fails to discharge that burden-for example
12 by remaining silent-its opportunity is waived and its case
13 wagered."  *Guarino v. Brookfield Township Trustees*, 980 F.2d 399,
14 405 (6th Cir. 1992).
15     Plaintiff claims that his Fourteenth Amendment due process
16 rights were violated when he was denied: (1)"lockup order" reviews;
17 (2) the opportunity to present his views on disciplinary charges;
18 and (3) staff assistance at the ICC meetings held on May 19, 2006,
19 May 26, 2006, August 18, 2006, and November 9, 2006.  Defendants
20 argue plaintiff's claims fail because he has not proven that he had
21 a liberty interest in avoiding administrative segregation or that
22 disciplinary charges were presented at any of the contested
23 hearings.  Further, defendants argue, plaintiff had an opportunity
24 to – and in fact did – present his views during the hearings at
25 issue, was not denied staff assistance, and otherwise received all
26 process that was due.
27     The Due Process Clause protects prisoners from being deprived
28 of liberty without due process of law.  *Wolff v. McDonnell*, 418

7

U.S. 539, 556 (1974). To state a claim for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest. Liberty interests may arise from the Due Process Clause itself or from state law. *Hewitt v. Helms*, 459 U.S. 460, 466-68 (1983). The Due Process Clause itself does not confer on inmates a liberty interest in being confined in the general prison population instead of administrative segregation. *See id*. Liberty interests created by prison regulations are limited to freedom from restraint that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Despite plaintiff's assertion that he was entitled to due process regarding his placement in administrative segregation, there is "no liberty interest in freedom from state action taken within the sentence imposed" and "administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence." *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997). Even so, "a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations, subject to the important limitations set forth in *Sandin* . . . ." *Wilkinson v. Austin*, 545 U.S. 209, 222 (2005).[2] Under *Sandin*, a factual comparison must be made between the conditions in general population and administrative segregation, "examining the hardship caused by the prisoner's challenged action in relation to the basic conditions of life as a prisoner." *Jackson v. Carey*, 353 F.3d 750,

---

[2] California's prison regulations set forth a detailed procedure for placement and retention of inmates in administrative segregation. *See* Cal Code Regs., tit. 15, §§ 3335, *et seq.*

8

755 (9th Cir. 2003). Courts consider three factors in undertaking this analysis: (1) the prisoner's conditions of confinement; (2) the duration of the sanction; and (3) whether the sanctions will affect the length of the prisoner's sentence. *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003).

Plaintiff was in administrative segregation for 268 days. He alleges that during this entire time he was required to stay alone in his cell with only 50 minutes a day to exercise and shower. He alleges that he was isolated from other inmates and denied access to his property. Because he is illiterate, plaintiff was unable to read letters sent to him by his family and so did not learn of the death of his child and the child's mother until well after the fact. In contrast, plaintiff asserts that in general population he was able to leave his cell, interact with other inmates, and take classes. He also asserts he was free to exercise his religion, but he does not explain how his religious practice was restricted while in administrative segregation.

Duration of confinement is one factor, and plaintiff was retained in administrative segregation for a relatively long period of time. However, there is no indication that plaintiff's placement in segregation affected the length of his sentence. Moreover, the differences in the conditions of administrative segregation as compared to the general population fall within terms of confinement ordinarily contemplated by a sentence and do not constitute an atypical and significant hardship. Thus, plaintiff has not shown he had a liberty interest in avoiding administrative segregation, and he was therefore not entitled to due process protections before he was placed therein.

Even if plaintiff had shown a liberty interest, however, the evidence clearly demonstrates that he received all process that was due. When a prisoner is placed in administrative segregation, due process requires prison officials to: (1) conduct an informal nonadversary review of the evidence justifying the decision to segregate the prisoner within a reasonable time of placing the prisoner in administrative segregation; (2) provide the prisoner with some notice of the charges before the review; and (3) give the prisoner an opportunity to respond to the charges. *See Toussaint v. McCarthy*, 801 F.2d 1080, 1100 (9th Cir. 1986), *abrogated in part on other grounds by Sandin*, 515 U.S. 472. The prisoner is not entitled to a "detailed written notice of charges, representation by counsel or counsel-substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation." *Id.* at 1100-01. If a prisoner is to be retained in administrative segregation, officials must periodically review the initial placement. *Id.* at 1101.

1. Lockup Order Reviews

Plaintiff claims that he was denied review of the March and May notices. The record reflects that plaintiff received notice of the reasons for his segregation and that for both notices a staff member conducted an informal administrative review of the lockup order. And as to the May notice, plaintiff received an initial administrative segregation review in front of the ICC within 10 days of the notice. (*See* Pl. Opp'n Ex. 1). While the record does not reflect that plaintiff also received an initial administrative segregation review after the March notice, he did receive an administrative review of the notice. Moreover, when plaintiff

received the March notice he was already in administrative segregation, and had been placed there pursuant to a procedure that complied with all due process mandates.[3]  Plaintiff's placement in administrative segregation on February 22, 2006, was subject to initial review, and pursuant to prison regulations a subsequent review was not required to be held for 90 days.  *See* Cal. Code Regs., tit. 15 § 3335(d)(3).  A subsequent administrative review was conducted on May 19, 2006 – within the 90-day period.  Accordingly, to the extent plaintiff did not obtain an initial administrative segregation review after the March notice, the failure to hold such a hearing was harmless because plaintiff was already properly in administrative segregation.  Moreover, the March notice did not differ materially from the initial order placing plaintiff in segregation and did not raise any new issues, beyond the conclusion reached by the investigation that plaintiff was a destabilizing and disruptive factor in the CMF general population.[4]

   2. Opportunity to Present Views

   Plaintiff claims he was barred from presenting his views

---

[3] Plaintiff does not claim that he did not receive 72 hours notice before the initial administrative segregation review on February 24, 2006, so the court does not consider it part of his claims.  Plaintiff does claim he was not told why he was being placed in segregation, but the record clearly reflects that he was given an administrative segregation notice stating the reasons for his placement, which he refused to sign.  (Pl. Compl. Ex. E).  Plaintiff does not otherwise assert any procedural irregularities in connection with his initial placement in segregation.

[4] The first administrative segregation notice issued on February 22, 2006, stated plaintiff was being retained in segregation pending completion of an investigation for possible safety concerns or transfer relating to the altercation between black inmates from Oakland and San Francisco.  The March notice stated that plaintiff was being retained because the investigation ultimately concluded plaintiff was a disruptive and destabilizing factor within the CMF general population.

11

during the four contested hearings. The minutes of the hearings, however, indicate that plaintiff actively participated in the hearings and had an opinion on the ICC's ultimate decision each time. Plaintiff's conclusory assertion that he was not allowed to present his opinion does not create a genuine issue of material fact, particularly in light of the documentary evidence to the contrary.

Furthermore, the complaint alleges only that plaintiff was not given an opportunity to respond to disciplinary charges contained in the March and May notices – not that he was forbidden from participating in the administrative segregation review. The record is clear that no disciplinary charges were presented at any of the contested hearings. The disciplinary charges relevant to plaintiff's placement in administrative segregation, contained in the February 25, 2006, RVR, were considered at hearings on April 13, 2006, and May 4, 2006. Defendants claim, and plaintiff does not refute, that plaintiff refused to attend these hearings.[5] To the extent plaintiff requested to be heard on what he believed were disciplinary charges during the ICC hearings, California regulations are clear that the ICC had no authority to reconsider the charges. *See* Cal. Code Regs. tit. 15, § 3338(e). Accordingly, because the charges that related to plaintiff's placement in administrative segregation had already been determined and were not at issue in the ICC hearings, plaintiff's due process rights could not have been violated by any refusal to allow him to speak on disciplinary charges he believed were contained in the March and

---

[5] Plaintiff makes no allegations of procedural irregularities in connection with the disciplinary hearings.

12

May notices.

3. Denial of Staff Assistance

Plaintiff claims that he was denied staff assistance at the four contested hearings.  Plaintiff would only be entitled to staff assistance if the segregation he was placed in was disciplinary or if disciplinary charges were at issue.  The record is clear that plaintiff's placement in segregation was administrative, not disciplinary and that no disciplinary charges were presented at any of the hearings.  Accordingly, plaintiff was not denied due process for any failure of the assigned staff assistant to aid him during the hearings.

Finally, the Eleventh Amendment bars damages actions against state officials in their official capacity. *Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007).  Accordingly, plaintiff's claims against the defendants in their official capacities are dismissed.

Defendant's motion to dismiss, converted to a motion for summary judgment (#18, #29), is hereby **GRANTED**, and plaintiff's claims are hereby **DISMISSED**.  The clerk of the court shall enter judgment accordingly.

**IT IS SO ORDERED.**

DATED: This 19th day of November, 2009.

_____
UNITED STATES DISTRICT JUDGE

13